GEOFFREY A. HANSEN
Federal Public Defender
ELIZABETH FALK
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   415.436.7700
Facsimile:   415.436.7706
Email:       elizabeth_falk@fd.org

Counsel for Defendant VILLAGOMEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>ISAI VILLAGOMEZ,<br><br>   Defendant. | No. CR 18-599 VC<br><br>**REPLY BRIEF IN SUPPORT OF SECOND MOTION TO COMPEL THE PRODUCTION OF REPORTS RELATED TO THE ACTIONS AND COMMUNICATIONS OF GOVERNMENT INFORMANT, CELLULAR TELEPHONE NUMBERS BELONGING TO INFORMANT, AND IMPEACHMENT MATERIAL RELATED TO INFORMANT**<br><br>Hearing Date:  February 15, 2022<br>Hearing Time:  2:30 pm<br>Court:         Hon. Vince Chhabria |

**INTRODUCTION**

The Court should re-order the production of the requested materials requested by Mr. Villagomez. To be clear, the Court has already ordered the production of the vast majority of the documents Mr. Villagomez now seeks. *See* Dkt. 74, Dkt. 78. As to Categories 1, 2 and 3, the government's response is contradictory, incomplete and sketchy given the record. As to Category 4, general principles of due process govern and the government cannot have it both ways; it cannot both rely on the CI's credibility when arguing lack of inducement, then deny Mr. Villagomez impeachment materials about that same CI that would tend to cause the jury to believe Mr. Villagomez' testimony that he was induced.

For these reasons, the Court should order production of all 5 categories of requested information.[1]

**ARGUMENT**

**I.    CATEGORIES 1, 2, AND 3**

The government first states, and Special Agent Espinoza affirms, that he is unaware of the existence of any recorded communications between the CI and himself. Espinoza Decl. at ¶ 10. Although Mr. Villagomez' request included text messages between Agent Espinoza and the CI, the response did not specify "text message, the AUSAs in the case, specifically Zachary Abrahamson, have now confirmed that the response includes text messages. *See* Reply Declaration of Elizabeth Falk ("Falk Decl.") at ¶ 2.

On the other hand, with respect to Category 1 and 2 (seeking law enforcement reports and records that relate to the charged case authored by Southern California federal law enforcement or cross-designated Task Force Officers), Officer Espinoza does not aver that no such reports exist. Moreover, in resisting production, the government writes "there is no allegation that those [Coast Guard] offices or agents participated in the instant investigation." Gov. Resp. at 4:8-10.

---

[1] With respect to Category 5, the government has voluntarily produced the information, although the information provided by TFO Elmore conflicts with the information he provided during the evidentiary hearing on Mr. Villagomez' motion to suppress. *See* Dkt. 118 at 335:11-19 (TFO Elmore testimony that the CI "would call from several different phones" and "had lots of different phone numbers.")

1

1   This contention is contradicted by Agent Espinoza's declaration, who states that the CI told him
2   about an "unsuccessful attempt to purchase narcotics from a potential target in Southern
3   California" and that Agent Espinoza told the CI "he had no objection to the CI completing the
4   transaction in Northern California." Espinoza Decl. ¶ 9. The instant motion to compel seeks the
5   production of all law enforcement reports that reflect the CI's activities with respect to this
6   known "failed transaction" or any law enforcement monitoring of the "failed transaction" that
7   the government now contends Mr. Villagomez participated in.

8       The requested law enforcement reports are standard issue Rule 16 material and Mr.
9   Villagomez submits it is highly odd that, if no reports exist, that Agent Espinoza has not
10  represented such. These reports, if they exist, are also within the scope of this Court's April 15,
11  2021 Order. *See* Dkt. 74. Text message evidence further demonstrate that the DEA in NDCA
12  was well aware that this CI was working with the Los Angeles Coast Guard prior to the Court's
13  April 15, 2021 Order, and that at least one agent of the NDCA DEA knew that Agent Espinoza
14  was a potential source of information about the CI's work for the government. Falk Decl. ¶ 4-6.

15      Given that the government will need to call Agent Espinoza at this trial and Agent
16  Espinoza appeared to be aware of (and had texting relationships) with DEA Special Agents that
17  the CI was working with in Northern California, it is highly likely that Special Agent Espinoza
18  has the same relationships with DEA agents the CI was working with in Southern California.
19  Falk Decl., Exhibit A (filed under seal*); see also id.* at ¶ 6. Because the government is now
20  working with Special Agent Espinoza on this case, its claim to have "no knowledge" about the
21  potential location of Southern California-based law enforcement reports related to this case is
22  specious. *See United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir 1989)("the scope of the
23  government's obligation under Rule 16(a)(1)(C) should turn on the extent to which the
24  prosecutor has knowledge of and access to the documents sought by the defendant in each
25  case.") The Court should, at minimum require the government to inquire, through Agent
26  Espinoza, whether any Los-Angeles based law enforcement agent known to Agent Espinoza as
27  having worked with the CI from August to November, 2018 is in possession of any reports,
28

recorded communications, or other documents or records related to this case that the government is required to produce pursuant to Rule 16.

## II. UNDER BOTH *BRADY* AND *GIGLIO, THE COURT SHOULD ORDER THE PRODUCTION OF* EVIDENCE RELATED TO BIAS AND THE MOTIVES OF THE GOVERNMENT INFORMANT TO INDUCE CRIMINAL ACTIVITY

Regarding Mr. Villagomez' requests for various categories of CI impeachment evidence (Request #4), the government asserts that it need not produce *Giglio* evidence for non-testifying witnesses. Under *Brady v. Maryland*, 373 U.S. 83 (1963), however, the government has an overarching obligation to turn over all evidence "favorable to the accused" that is "material to either guilt or punishment." *Id*. at 87. "Impeachment evidence is exculpatory evidence within the meaning of *Brady*." *United States v. Blanco*, 392 F.3d 382, 387 (9th Cir. 2004)(citing *Giglio v. United States*, 405 U.S. 150, 154 (1972) and *United States v, Bagley*, 473 U.S. 667, 676 (1985). "*Brady/Giglio* information includes 'material that bears on the credibility of a significant witness in the case.'" *Id.* (citing *United States v. Brumel-Alvarez*, 991 F.2d 1452, 1461 (9th Cir. 1993)). "The government's obligations under *Brady* are 'not confined [however] to evidence that affirmatively proves a defendant innocent: even if evidence is merely 'favorable to an accused' its suppression violates *Brady* if prejudice results." *United State v. Welton*, 2009 WL 2390848 (C.D. Cal. 2009) at *6 (citing *Gantt v. Roe*, 389 F.3d 908, 912 (9th Cir. 2004)).

*Brady* and its progeny are not limited to testifying witnesses. *See United States v. Rodriguez*, 482 Fed.Appx. 231, 236 (9th Cir. 2012)(unpublished)(opining that the fact that a confidential informant did not testify at a trial did not end the inquiry as to the requirement that the prosecutor produce impeachment materials, as "there is persuasive authority for the proposition that *Brady* and related obligations extend to non-testifying witnesses")(citing *United States v. Jackson*, 345 F.3dd 59, 70 (2nd Cir. 2003)(finding undisclosed materials that could have been used by defendants to impeach the credibility of a deceased, non-testifying informant met the first prong of a *Brady* violation claim, but upholding conviction due to the fact that undisclosed materials would not have resulted in a different outcome given overwhelming evidence of guilt).

3

Although the undersigned has not been able to locate any cases in the Ninth Circuit where a deceased informant's statement have been used at trial, or where a deceased informant's credibility is at issue in an entrapment defense, prosecutors in general have an obligation under *Brady* to disclose material information that bears on the credibility of government informants.  Here, even if the confidential will not be testifying, this is not a case where the informant's presence is incidental or superfluous to the charged conduct.  Unlike cases where a confidential informant merely passes information on to undercover agents, who then independently adduce evidence against a suspect, here the confidential informant is *central* to the charged transaction.  In an attempt to defeat the "inducement" prong of the entrapment defense, the government must necessarily rely on the credibility of the informant at issue, even when deceased.  In this vein, the motives of the CI to induce and encourage non-disposed persons to commit crimes – including payment/reward structures and the compensation and benefits offered to him in exchange to bring targets to law enforcement's attention is certainly evidence "favorable to the accused" and is highly "material" to an issue related to innocence in connection with an entrapment defense.

Ordinarily, an informant's arrangement with the government falls within the *Brady* rule (*see United States v. Joseph,* 533 F.2d 282, 286 (9th Cir. 1976)) and should be disclosed here because the requested evidence clearly can be used to impeach the confidential informant by means of his bias and self-interest, as well as motive to induce Mr. Villagomez.  *See Bagley*, 473 U.S. at 676.  Because "the *Brady* rule is based on the requirement of due process." *Bagley*, 473 U.S. at 675, its principles should apply in full force here, regardless of the informant's status as deceased.  At the upcoming trial, the government will rest its case on an assumption that the deceased informant performed his duties legally and within the boundaries of his cooperation agreement.  Given same, the Court should not permit the government to then thwart *Brady*'s mission and hide evidence that suggests the CI had a strong motive to ensnare as many defendants as possible into criminal charges.

//

//

4

### III. FEDERAL RULE OF EVIDENCE 806 MAY ALSO APPLY AT TRIAL WITH RESPECT TO REQUEST # 4.

Although the parties agree here that the informant is a non-testifying witness by virtue of the fact that the informant is deceased, there is a significant disagreement about whether or not the prosecutors will seek to admit any of the informant's statements for their truth. To the extent the government attempts to admit the non-testifying CI's statements for their truth about things that supposedly happened or did not happen surrounding Mr. Villagomez, he should be permitted to attack the credibility of the informant.[2] At trial, however, it will be too late to order the government to produce impeachment materials related to the CI. A far better solution is to order the government to produce the requested material. Issues related to the potential admissibility of the produced material can be sorted out later – particularly when the CI is now deceased and *Roviaro* privilege no longer applies.

**CONCLUSION**

For the reasons stated, the Court should order production of the 5 requested categories of documents and materials forthwith.

DATED:  February 14, 2022

Respectfully submitted,

GEOFFREY A. HANSEN
Acting Federal Public Defender

/s/

ELIZABETH FALK
Assistant Federal Public Defender

---

[2] The government is correct that the undersigned inadvertently cited the non-final, initial version of the Ninth Circuit opinion in *United States v. Becerra* 992 F.2d 960, 965 (9th Cir. 1993) due to the fact that she did not realize the opinion had been amended at a later time on the cited issue. The citation reference in the Opening Motion, present in the May 5, 1993 version of the opinion, was altered in the final, amended version of July 16, 1993. In the amended version, the Court reversed course on that portion of the opinion and upheld the denial of a motion to compel impeachment evidence related to a non-testifying government informant. In the amended version, the Ninth Circuit disagreed with the district court's reasoning but ultimately upheld the denial upon concluding that the non-testifying witness' statement was not hearsay. The undersigned regrets the error.

5