**FEDERAL PUBLIC DEFENDER**
NORTHERN DISTRICT OF CALIFORNIA
19TH FLOOR FEDERAL BUILDING - BOX 36106
450 GOLDEN GATE AVENUE
SAN FRANCISCO, CA 94102

**GEOFFREY HANSEN**
*Acting Federal Public Defender*
**ELIZABETH FALK**
*Assistant Federal Public Defender*

Telephone:  (415) 436-7700
Fax:  (415) 436-7706

February 25, 2022

The Honorable Vince Chhabria
United States District Judge
San Francisco Courthouse 17th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      **RE:  Comments on the Court's Additional Proposed Questions to Potential Jurors in** *United States v. Isai Villagomez,* **CR 18-599 VC**

Your Honor:

I write to respond to this Court's Order dated 2/24/2022 requesting feedback about the Court's proposed "case-specific" additional questions to be included in the written questionnaire that will be distributed to potential jurors in advance of trial.

**Question 1**: No objection, although based on the questionnaire that recently went out to jurors in the trial currently proceeding before Judge Orrick, *United States v. Hamilton*, CR-21-202 WHO, this question appears to already be on the "Standard Questionnaire" as Question 20. Question 20 on that questionnaire was not indicated as a "case-specific question" but appears in the "background questions" section. If this question is already on the Standard Questionnaire, then adding this question as a case-specific question would be redundant.

 **Question 2**:

Have you, or any of your family members had an especially positive or negative   experience with a law enforcement officer or agency?

Requested change: "Would you tend to believe or disbelieve the testimony of a law enforcement officer?

Rationale:  The goal of law enforcement-related questions is to ascertain whether or not a juror would give more or less weight to *the testimony* of a law enforcement officer simply because he or she works in law enforcement.  In the defendant's view, the concern is not whether a potential juror has been pleased with the way a law enforcement officer responded to a call for service; it's whether a potential juror would treat law enforcement officer testimony as automatically more credible than the testimony of a lay witness by virtue of his or her employment alone.  Many people have never had an individualized "especially positive

experience" with law enforcement but nonetheless hold law enforcement in such high esteem that it results in a belief that law enforcement officers are automatically more credible than civilians because they "earned" the badge, the right to have a firearm, the right to arrest and detain, etc. This would be improper.

The defense-suggested form of the question gets directly at the critical issue. Police officers should be held to the same standard as other witnesses on the stand, and should not begin testimony with either a huge "plus sign" or a "black mark" in the eyes of a potential juror simply because he or she in in uniform with a badge.

**NOTE**: The defense's requested form of this question appears in the "background questions" section as Form Question 21 on the District's Standard Questionnaire that recently was distributed in a trial still in session with Judge Orrick: *United States v. Hamilton*, CR-21-202 WHO. If the undersigned is correct that the requested question is now a "standard question" on the Form Questionnaire in the "background questions" section then this question should be eliminated as a "case-specific" question.

### Question 3:

Do you have any especially strong opinions or beliefs about race, color, immigration status, national origin, ethnicity, sex, or sexual orientation that could affect your ability to serve as a juror?

Requested change: Do you hold any strong views about race, immigration status, national origin, ethnicity, immigration, border control, sex or sexual orientation that could affect your ability to serve as a juror in a case involving a defendant of Mexican descent?

Rationale: The defendant does not understand the inclusion of "color" in this question. More importantly, in the event Mr. Villagomez elects to testify, the jurors will likely hear testimony that he is of Mexican descent (although he was physically born in the United States, his parents were born in Mexico and he maintains close ties to family in Mexico; namely, his father). There has been a tremendous amount of derogatory press over the last several years, particularly during the last presidential administration, about Mexican immigration as a "problem." Mr. Villagomez is entitled to an unbiased jury who will not judge him purely because of his national origin and history. Without identifying the specific origin and ethnicity at issue for Mr. Villagomez, the Court risk defendants not exposing potential bias about Mr. Villagomez' particular ethnicity and national origin.

**Question 4**: No objection

**Question 5**: No objection, however the defense requests an additional question to be substituted for Question 1, 9 or 10: "Do you believe that when a defendant is charged with a crime, that must mean he or she did something wrong? Yes, No. If yes, please explain."

Rationale: The presumption of innocence is an extremely important concept to our Constitution and our justice system, yet it is not a naturally intuitive concept. The defendant is entitled to a jury

*US v. Villagomez, CR 18-599 VC*
February 25, 2022
Page 3

who will provide him a clean slate at the beginning of trial. Many potential jurors place great weight on the simple fact that a defendant has been charged and that view grossly interferes with jurors' ability to presume the defendant innocent. The Court's version of this question states nothing about the fact that the "charge" or accusation itself is meaningless and should not bear at all on the presumption of innocence. The defense proposal is also open-ended and will be more likely to draw out honest responses and viewpoints about the validity of the presumption of innocence afforded a defendant.

**Question 6:**

A defendant in a criminal case has the constitutional right not to testify, and you can't presume the defendant is guilty or reach any other conclusions based on the fact that a defendant did not testify. **Do you have any concerns about accepting or applying this rule?**

Requested change: Change the bolded part to "Understanding this, would it still be difficult for you to vote that a defendant is not guilty if you did not hear any testimony from the defendant?'

Rationale: No one is going to admit that he or she "cannot accept or apply a rule" on a document submitted to a federal court. We are taught to follow rules from the time we are toddlers, so the defense objects that framing the answer in this way will make potential jurors concerned that a "yes" answer could subject them to some sort of negative consequence. The questionnaire should be designed to get out a potential juror's true viewpoints on bias, motive, and preconceived views of the criminal justice system that could interfere with the delivery of a fair trial for the defendant. The way this question is worded sets up a "no" answer, as opposed to attempting to ascertain a juror's true viewpoint about this extremely important Constitutional right.

**NOTE:** This question was also included in the "background questions" section of the District's Standard Questionnaire as Question 22 in *United States v. Hamilton*, CR-21-202 WHO. If this question is now a standard "background question" then it would be redundant to also include it as a "case specific" question.

**Question 7**:

No objection, except that the middle of the question is an incorrect statement of the law as follow: " . . .because there are factors – factors having nothing to do with this trial – that will determine the appropriate sentence in the event you find the defendant guilty." Very often, the evolution of a case through trial has a very significant impact on a defendant's sentence after a guilty verdict. The court's view of a case and a defendant can (and usually does) shift rather dramatically as a result of trial, and this is particularly true if a defendant testifies. Because the defendant believes that questions contemplated by potential jurors should include accurate information, the defendant objects to this clause due to the fact that the defendant believes that this portion of the sentence is inaccurate.

US v. Villagomez, CR 18-599 VC
February 25, 2022
Page 4

**Question 8**:

The defendant in this case is accused of drug-related crimes. Is there anything about the nature of these accusations that could affect your ability to serve as a juror in this case? Yes ___ No ___. If yes, please explain.

<u>Requested change</u>:  This case involves a kilogram of heroin.  Is there anything about the nature of the charge, or the fact that this case involves heroin, that could impact your ability to serve as a juror in this case?

<u>Rationale</u>:  The defendant sees no reason why the Court should not specify the drug at issue in the questionnaire.  This is a one-drug-one-quantity case and jurors' views about other drugs are honestly irrelevant.  There is huge press right now about the "opiate crisis" and in San Francisco in particular, about deaths from opiate use.  Jurors with individualized experiences with heroin are the jurors who might not be the best fit for this case.  The way this question reads will likely solicit answers that focus on the legality of marijuana, which really is not applicable to this trial.  The rephrasing of the question to: "involves" as opposed to "accused of" also eliminates one additional time that the questionnaire emphasizes the fact that the defendant has been "accused" of something.

**Questions 9 and 10**. No objection, but the defendant believes there is a more important question to substitute for one of these questions to the extent the Court only can submit 10 additional "case-specific" questions.

**Additional Requested Question/Substituted Question for 9 or 10:**

Have you, or anyone close to you, struggled with substance abuse or drug addiction of any kind?  If yes, please explain.

Rationale: In the event Mr. Villagomez testifies, it is certain that evidence of his significant drug problem will surface.  A potential juror with a particularly difficult history on this issue might not be the best juror for the instant case.  For example, a potential juror who has struggled up and down with a close family member's addiction such that the family member has "worn them down" could be more impacted by that experience in weighing the evidence than the actual testimony offered in court.  Drug addiction or substance abuse on the part of one's self or one's loved ones is a difficult, if not impossible thing for a potential juror to discuss in open court during attorney-led voir dire. The juror questionnaire is the only place where a potential juror is safe to expose this history without 80 sets of eyes staring him or her down.  Because this issue bears on the potential testimony of the defendant, it is particularly important to ascertain any juror bias against addicts purely due to negative personal experience with an addict.

*US v. Villagomez, CR 18-599 VC*
February 25, 2022
Page 5

          Sincerely,

          GEOFFREY HANSEN
          Acting Federal Public Defender
          Northern District of California

          /S

          ELIZABETH FALK
          Assistant Federal Public Defender